Loretta Lynch. Mr. Chavez. Please the court. My name is Nicholas Chavez, and I represent the petitioner, Rinaldo Marques. This case raises the issue of whether an application for admission for purposes of section 11, 11 82 a 7 a includes post entry adjustment of status, or does it require a lawful entry? There is strong textual basis for concluding that it does not include an adjustment of status. This case is not about whether the petitioner engaged in marital fraud. I agree that the government has a legitimate and compelling interest in fighting immigration fraud. Uh, the B I A wrong in its order. Yes, Your Honor. When it says your client pled the B I A order says Marks Marquez, your client pled to a 3 71. That that's just wrong. Uh, Mr Marquez denied the allegation to charge that he both charges. There's two charges. Um, and, uh, the marriage criminal case. This is an immigration. I know, but there's an underlying Operation Phony Love criminal conviction of the woman, correct? I'm not sure if the woman that he supposedly married, she took a plea. That's correct. And the B I A order as to your client says that he pled. It's just a misstatement. That's a misstatement. You're okay. There are two separate, uh, proceed processes that because if he pled to it, there'd be an obvious a two a six deportable, removable gone. That's correct, Your Honor. But if the B I A and the B I A didn't, why, if even though there's no conviction, if they say there's overwhelming proof of fraud, I know they withdrew the a six. But wouldn't you be able to then say, you know, in some version of their logic, this may not even be what the government's saying. But at that point, he lacked any proper entry document. And therefore, um, to convert status, he sort of has to be readmitted. Is that is that sort of the theory they're urging? The theory that they're urging is a theory. Um, well, to clarify, he did deny both allegations that he committed marriage fraud. Um, and he also denied the allegation that he was not in possession of a valid entry document. Now, what happened? The marriage fraud charge. And so they were the trial involved a hearing about marriage fraud when the underlying removal charge was whether or not he possessed a valid entry document or not. And that's what with the government is trying to do is trying to say that at the time of his adjustment of status, he was assimilated to a person who was applying for entry. Um, as if he was outside the country. Uh, and what they were trying to argue was that, um, the because he was not in possession of a valid entry document, they were trying to argue that the term valid somehow meant that he had to have a valid visa at the time of his application for adjustment status, which is absurd because the adjustment, there are two different concepts here. But the BIA has pretty stubborn about that, including the 28 J letter they submitted. That is how the BIA interprets its authority. That is how, but it's against the plain language. The plain language is clear here that section 11 82 87 a prohibits the entry that involves an entry that it involves a person who is not in possession of valid immigrant visa. Now, if you look at the context, because this, this court ruled that when we look at that, um, that language, it uses the word admission and admission is defined by the law as, as a person who is making a lawful entry into the United States. And this court in Martinez versus McCasey, they held that under that same statutory definition that the term admission means lawful. You're correct. And we, and we follow that accordingly. What happens in this case? How did this play out ultimately? Well, we, we would ask the court to vacate the deportation. And how does it play out? Uh, logically, he would be put in the position where he was in the beginning, which is a person who has a lawful permanent residence. Now, initially, what we wanted to do is we wanted to file a motion reopen with the BIA to see if he can ask for relief. But in order for him to do that, there was an allegation, uh, that he engaged in marriage fraud, an allegation which he denied from the beginning. When that order became order from the BIA, we filed a motion to reopen to see if he can seek relief. And there's, there's relief available for individuals who have engaged in marriage fraud. But what is, what is hard to understand is, is that that's not the underlying removal charge. They withdrew inexplicably the right, correct charge. And in this case, as I inexplicably, so you had never, there was no involvement or just the record. Just not reflect what that that's correct. Now, which is correct. You say it's inexplicable. Does that just mean the record we have doesn't explain it? Or do you also? Well, what I meant by that, Your Honor, is, is that we don't know the reason why the marriage fraud, which is the correct charge, was withdrawn. I could only speculate looking at the record. It was arguing that it was an invalid marriage and an invalid marriage. You don't need to have the marriage fraud. You can somehow use under this newfangled interpretation that you can somehow say that this person did not possess a valid immigration, unexpired immigration visa document. Back to Judge Higginbotham's question. I thought at the end in your relief section, you did have an alternate request that we remanded. That's correct. Again, could you, what would happen if we followed that? What happens on remand if this goes back to the BIA? What are you asking? Well, in the alternative, if we were to say that this does not involve the plain language, that I would like, at the very least, for the BIA to expand more on what, how they came about with saying that a person who shows up at a port of entry with a, how does this, how does this charge reflect the situation, I guess? Because I think here, but I don't think this case amounts to nothing more than an improper charge by the government. I think the government had the correct charge initially, but they withdrew that. And based on my experience, I've never seen a charge like that relating to a person, relating to a person's application for adjustment of status. Well, counsel, make sure I understand what you're saying. This has seemed to be an odd case. 212A7 doesn't seem to be the radiest of the most apt grounds for removal, though it is open to question. You talk about Mukasey versus Martinez. That's actually 212H, not 212A7, where we analyzed it, unless I'm mistaken. So there's not case law specifically dealing with how to interpret this language, but, so it's a stretch, but not necessarily off range of possibilities. So it does seem to be, on the record before us, very strong evidence of marriage fraud. And his I-130 was based on his marriage to, which was void. So surely there's a basis on which the BIA can deal with that, or an alternative. So you seem to be acknowledging the fraud, but just saying 212H or something else gives you a why to seek relief from removal on that basis. Is that, not that that's before us, but that's how you see this playing out. Yes, Your Honor. And I'd like to also . . . If we are, so return to the question of whether 1182, 212A7, why there is not some ambiguity to there. To me, the ambiguity is not so much in 212 itself, A7, but in the overall concept of adjustment of status, which was, as you explained in your brief, the government does, I forget which, the general understanding of adjustment of status is to prevent the need to go back to a consulate in a foreign country and apply for admission after you're already here on non-immigrant status. But that is an equivalent, it's a virtual readmission when your status is adjusted. So I can see the BIA pushing this as many times as they've had. They surrendered on 212H a little while ago, but not on this. So why isn't that concept that adjustment of status is just a short form that prevents the physical need to leave the country and then be readmitted for an immigrant visa, but you still have the equivalent of that. And so when you've adjusted your status without having to leave, legally you still are being readmitted as an immigrant. It works logically. It's a plausible interpretation. The problem with that is that there can't be a full assimilation, I would submit, because although the person is placed virtually outside, there has been some recognition of this distinction about the entry document requirements, which is the underlying charge. And that, I can't escape from that. It's very plain that that is required. I agree that assimilation agrees in some context. Let me ask you about the documents. After an I-130 is approved, as his was, correct? Yes, sir. It is non-wife's application for him. He did not get an immigrant visa at that time, did he? No, no, Your Honor. He did not get an immigrant visa. Nobody would get an immigrant visa by the approval of an I-130, or am I mistaken? The I-130 petition would not confer an immigrant visa, per se. The difference is in the context of a person applying for admission from the outside. The person is, after the I-130 petition is approved, the person is issued. They don't have a visa already. If they're not already here, they need an immigrant visa to come in after the I-130 is approved. That's correct, Your Honor. For adjustment of status, it's more of an abstract notion. There's not a new visa, is I guess what I'm asking. And the government can tell us if your answer isn't quite right, but your understanding there's not a new immigrant visa by the approval of an I-130 to somebody who's here on a non-immigrant status. That's correct, Your Honor. So A-7 would never be available. There would never be a valid unexpired immigrant visa for somebody who is properly adjusting their status. That is correct, Your Honor. Now, I realize that assimilation, there is that need to assimilate or to have a functional equivalent, but that assimilation concept is usually applied to prevent absurd results. Now, let's just say that in this case, he's being charged with 212-A-7-A. If they would have properly applied it to somebody who's outside, that would not lead to absurd results. Why? Because the government at least has five grounds upon which they can seek the deportation of a person. So this doesn't become problematic. The government has, for example, it could have charged here the marriage fraud, and that applies both in the adjustment status context and the immigrant visa context. It could have also done something in my practice is very obvious, is on the notice to appear, the allegations, it could have alleged that the person did not have a basis to obtain the proper, did not obtain the proper visa classification here. And therefore, he's, the person could be removed for being in violation of the law. That applies both in the adjustment of status context and that also applies in the immigrant visa outside context. The government could, Mr. Marquez, actually he obtained conditional residence. So under the law, the government could have made an affirmative finding that he obtained his visa or his adjustment status based on marriage fraud and could have terminated his conditional residence, and that's a separate ground as well. It's all listed. Also, there's a, there's a concept called rescission, and that applies for a person who's not eligible for adjustment status. When you, when you answered that BIA's interpretation is plausible, I thought you, part of your brief argument was that it's implausible because the logic of it would mean that applicants for LPR status change would have to go back to the consular office in their home country. What I, what I meant by, by it being plausible, they're using the term valid immigrant visa, and they're interpreting it to mean something that is a person needs to be meeting substantive compliance requirements. That's a, that's a plausible theory, but I, I think that in the, the context of this case, in the BIA does mean something different, I think, in this context, and the, the section here, 1201, Title VIII, has defined, it's laid out how a person can apply for an immigrant visa. When did the BIA start using A7 in this context? Have you gone back and figured it out? Uh. When do we first see this theory? Immigration judge's decision, the order of removal, the judge said that . . . No, not in this case. I mean, when did the larger theory emerge that A7 can supplant A6? I haven't seen it. Well, it must have started at some point. It's, this is, I think this is a trend, I'm not sure, but there is another, the sister, the court decision in Ortiz-Boucher . . . Yes. . . . which addressed the same issue, came with the conclusion that, that section 1182 of A7 did not apply in the adjustment status context. All right, counsel. Thank you. May it please the Court, my name is Kylie Kane here today representing Attorney General Lynch. Would you be able to answer Mr. Judge Higginson's, Mr. Judge Higginson's question? Is this the first case in which 212A7 has been used in this way, or how far back, how far back does this approach take? I am not able to answer how far back. That's not something I looked into in preparation for the argument. But several of the cases that have been cited in our briefs, you see the government has charged up both the A7 charge and the A6 fraud charge. So I would point, Ortiz is one of them, the Eleventh Circuit decision . . . But you lose there. I'm sorry? You lose in Ortiz. Well, we did lose Ortiz, yes, but . . . Has any circuit accepted this theory? Any circuit? We won in a decision that is cited in our brief from the Sixth Circuit, Stolzak. That case had the 1187, the A7 charge and the A6 charge. But the arguments presented here, I don't know if they were presented to that court. So, in other words, there's not a discussion of the arguments here about A7 being an improper charge. But we do have the Sixth Circuit affirming the board's decision to find him removable on that charge. When you cite, and I'll mispronounce it, Kuljinovic . . . Yeah. That no longer would be valid authority, right? That's right. So the board, since the circuits were rejecting the analysis in the 212H context, the board has since acquiesced to the court's decisions on that for uniformity of federal law. And it was . . . The Eleventh Circuit's the only one that said, well, it's hard to accept Martinez-type reasoning, which now BIA's retreated from and not make the same logical conclusion in this context. Ortiz is the only court to have found that, yes. And in the Ortiz decision, the government submits that we don't have a grappling with the arguments that are presented to this court about the absurdity of importing the reasoning from the 212H cases into this context. So we just don't think there's a . . . I mean, we're stuck with the Eleventh Circuit's decision. We did file a petition for a panel re-hearing, but it was denied. If we go the other way, we've created a split. There's already a split on the issue of whether a post-entry adjustment of status can constitute an admission. We have that in other contexts. For instance, in the Ninth Circuit, many, many years ago, they interpreted a post-entry adjustment of status as an admission in the context of removing an aggravated felon. And that's one of the arguments that the government's making in this case, is that it's absurd for someone who blows past the border, has no admission, adjusts their status to that of a lawful permanent resident, murders somebody, and then is not removable because the language of the statute for aggravated felony requires an admission. So that's one of the instances that the government is providing that the board has provided for years, since 1999, in matter of Rosas, to indicate that treating every admission as solely an entry at the border creates these results that are not intended by Congress. Well, tell us how A7 works, if there's an I-130 approved for somebody admitted under a non-immigrant visa. Would there ever be a valid, unexpired immigrant visa for that person who hasn't murdered anyone, so we're not worried about that absurdity? Married somebody who actually was eligible to be married, let's do away with that. Anything else you want to come up with? Not in this case. So, would that person get a valid, unexpired immigrant visa? Mr. Chavez's answer is correct, that an alien who adjusts their status in the United States is never issued a physical immigrant visa. That is what adjustment of status waives. That is the only thing it waives, is that the alien does not have to leave the country, go to the consulate in Rio, like Mr. Marquez would have to do, and pick up the visa. Instead, he gets to meet all of the same requirements that it takes to get an visa if he were an alien applying outside of the border applies to him. The difference is he doesn't have to step foot out of the country and go pick it up. Now, the somewhat confusing thing in Mr. Marquez's case is that he's what's called, and he has an immediately available visa because he married a United States citizen. So, that is one category of people who get visas or approved visa petitions that don't have to wait for a visa number to become available. If Mr. Marquez had married a lawful permanent resident instead of a citizen, he would not have what's called an immediately available visa. He would have to wait, even as a person who's adjusting his status, for a visa to become available. So, they are inextricably linked. I mean, they are, you have to wait for a visa to be issued abroad. You just don't have to go pick it up. Mr. Marquez didn't have to wait because he's in the special category of people who marry citizens, but the vast majority of aliens who adjust their visa holders have to wait for their number to come up. It can take years. So, they're not, it's not an instantaneous admission to LPR status like Mr. Marquez had. Was the BIA wrong when it said he had, that's, you, in its order, do you remember that instead at the outset? It said... Marquez has pled guilty to... Oh, yeah, I did want to, can I turn to that page, Your Honor? I think the BIA wasn't, wasn't referring to Mr. Marquez. So, this is at page 593 of the record. It says the petitioner pled guilty. Oh, and they're referring to the... They're referring to the petitioner as the United States citizen because she's the one that petitions for the visa. Below, although I'm the respondent here, below the alien, or, yeah, the alien's the respondent. So, she pleads to it. I mean, the million-dollar question for me is, why'd you withdraw? And, and you may just say, well, the record doesn't say that. It's our prerogative. I would say both of those things, but I also asked, if you want to know the real answer, I asked counsel who prosecuted the case. She said that this was one of the first of about a hundred and fifty cases that were prosecuted out of this Operation Phony Love, and when an alien... So, they charged up the A7 charge and the A6 fraud charge in these cases. That, they think that's the appropriate charge. This is not a new, newfangled, as Mr. Chavez said, way to go about an in-run around the fraud charge. They charge both very frequently, but the counsel that Mr. Marquez had below wouldn't concede to the charges. He wanted the government to prove up both of the charges. What happened in the majority of these cases was that aliens counsel would concede to both of the charges and then ask for a waiver, and then what would happen in removal proceedings is just duking out whether the alien should get the waiver as a matter of discretion. In this case, Mr. Marquez's counsel below would not agree, and because the A6 fraud charge has a higher burden of proof, because it requires intent, it requires the government to act to its detriment, it said, fine, we'll just go with the fact that you don't have a valid visa. We know you don't have a valid visa because your citizen spouse lied on her form and you paid to marry her, etc., etc. So, there was an overlap. I mean, obviously, fraud's all over this record. There's an overlap between the two, but the government dropped it because it didn't want to have to put on the evidence when there's a hundred and fifty other deportation cases waiting to go within the scheme in that same office. If you don't win, is there anything? My background is criminal law. You can't constructively amend. You can't, you know, what's the story? Could BIA pursue this man under an A6 theory? I asked trial counsel that as well. She's of the opinion, yes. And I did look into principles of res judicata just to, to see. It's not clear whether the charge that was initially charged, the fraud charge, was withdrawn with or without prejudice. It just doesn't say. I think that they will try if this case goes back to election day. Would marriage fraud be a crime of moral turpitude for A2? But he has not been convicted of marriage fraud. No, but that wasn't originally charged. No, there is an actual marriage fraud ground of removability, and that wasn't charged. He, I, I don't know this for a hundred percent. My speculation is that the government didn't go after the aliens criminally because it's easier just to remove them. It went after the citizens. So everybody that was convicted criminally for the 371, is that right, the conspiracy charge, those were all United States citizens. And it was easier just to then put everybody in removal proceedings that benefited inappropriately from having paid people to marry them. So, I know I have to win the ambiguity argument, so if I could speak to that a little bit. The focus from the government's perspective on how the ambiguity arises is to start with the deportability ground. You didn't hear Mr. Chavez say a whole lot about 1227. The whole focus is on 1182. But the actual charge of deport, deportability in this case is 1227. So the government's view is that we need to reconcile the fact that 1227A1A indicates that an alien who's in and admitted to this country, who commits inadmiss, has an inadmissibility problem, either at their time of entry or at the time of their adjustment of status, is deportable. Not that they're inadmissible, but that they're deportable under the 1227A1A provision. That's what the government's view is, is that 1227 specifically includes adjustment of status and having inadmissibility problems at the time you adjust your status. And the cross-reference to 1182, where it says that an applicant for admission needs to have the right documents, that's what creates the ambiguity. Now, the board has, since at least 1999, continued to hold that post entry adjustment of status can, in some instances, constitute an admission. And as you've pointed out, the board had to walk back from that in the 212 context because of what the circuits were saying about the plain language of the 212H waiver. But the same week that the board walked away and acquiesced to the circuit's view on that, the very same week it published the decision that the government 20, submitted the 28J like that. You've got JHJ out there plus this. Same week. And it was after. So it said, we throw our hands up on 212H, the circuits are right. There's nothing we can do when the circuits say it's plain language, right? Can't come back and say brand X arguments and agencies should control. We give up in 212H. But a week later it said, we are still sticking to our guns in the 1227 context as it interplays with 1182. There are times when a post entry adjustment of status has to be considered an admission to avoid the absurdity of things like the aggravated felony situation. Now, if I may, I'd like to talk about how this case may play out if it did get remanded because I know you spoke to . . . Well, before you leave, we're talking about 237A1A. Any alien who at the time of entry or adjustment of status is in a class of aliens and admissible. So you then throw us back at that stage to the grounds of indemissibility that you want to rely on. So at the adjustment of status time for Mr. Marquez, he needs to have been inadmissible, correct? Right. Which means he needs to be . . . he needs to have been admitted at that time. I mean, he was not inadmissible when he first came in under his non-immigrant visa, whatever that was, correct? That's right. He was lawfully here under whatever the record shows was his non-immigrant visa. So it's one thing to say that 237A1A refers to adjustment of status, but it doesn't directly tie itself to admission. It does say where there's a time of entry or adjustment of status, he was within a class who was inadmissible. But as you know better than I, there's an awful lot of grounds of inadmissibility that don't directly tie to somebody coming directly into this country at the time of admission. It's one thing just getting back to the word plausible, which maybe Judge Higginson has gotten the opposing counsel to walk back from a little bit. You're at least making a plausible argument here, but I don't see that it's . . . I mean, you got to create ambiguity for us, which is what you labeled this part of your argument as being. I just see it as creating a limitation on how far 237A1A goes. You've got to find somebody who has been admitted, who needs to be admitted at the time that he is ineligible for being admitted. I want you to proceed with what you want to say about how 237A1A actually helps you. Well, okay. So I hope I'm answering directly the question. I know that the attorney just said that there's a lot of inadmissibility grounds, right? And the 1227A1A doesn't list out the ones that it wants to apply. It just says if you're inadmissible under any of those grounds, either when you came in or when you adjusted status, then that makes you deportable. And Mr. Chavez correctly points out in the brief that one interpretation could be that not all of those could be an interpretation. What the board's looking at, though, is can it apply? I mean, it's trying to reconcile the statutes in a way that gives effect to all of the options for the government to institute these removal proceedings. So it doesn't start from the proposition that adjustment of status language in 1227 is a limiting provision. It's seeing if it can reconcile those two. If it can't, fine, that's not a removability ground. But if it can, then the government should be able to charge how it wishes in these cases. Now, I do want to say one thing that may not have been totally clear from the briefs. If an alien like the alien in Ortiz has a situation where the fraud involved is instituted by the citizen, okay? So we have that in Mr. Marquez's case, too, because we know that Diana Hernandez was never legally married to Mr. Marquez. She was married to a bunch of other people, never divorced. So when the citizen is the one that commits the fraud and gets a visa for somebody, a visa petition approved for somebody, the government cannot charge the 1182A6 fraud ground because that ground only applies when the alien commits fraud, not when the citizen does. The only ground that's available to remove somebody is the A7 ground to say you should have never, ever gotten that visa petition approved. You don't have the right documents because they're not valid. Why wouldn't A6 apply in a conspiracy? It would if you could, that's true, if you could link the alien. Whenever you marry someone and the one you're marrying is committing a fraud, it's gonna be pretty sure you're gonna get them on a conspiracy. Particularly if you pay $5,000 or whatever it was. Well, yes, in Mr. Marquez's case, no question. But in the Ortiz case, we have a situation that the government fears, is if the courts go the way that the Ortiz decision did. In that case, it wasn't a marriage fraud. It was a religious worker visa. And so it was the citizen who applied for the religious worker visa on behalf of an alien who's not a religious worker. And we lost the argument that he, that knowledge that he's not a religious worker, and therefore not entitled to a religious worker visa, should be imputed to him. If it wasn't that bad, you would have tried to go en banc with it. Well, we tried to go panel re-hearing on it, and if we get a split, we're in a better situation to turn the tide on this. I mean, we're hoping... I mean, obviously now we're sort of incentivizing. Your arguments have been very lucid, both sides, very candid. I just adore it when this level of clarity is in moderate statements. But it is the opposite fear, if we're looking at government fears, is you don't want to have an exactly appropriate subsection marriage fraud, but it's just harder to prove because of scienter. So this interpretation of A7 will swallow every A6. The government, again, having been a prosecutor, they're gonna choose the one that's easier to prove. That's worrisome, but that isn't... But why? Because both apply. I mean... Well, one's both there. I mean, there's significant overlap. There's significant, of course, especially when we're dealing with marriages. But keep in mind that not all people who get approved visa petitions have anything to do with marriage. We have an entire classification of employment visas where United States employers are lying to get visas for aliens, and that has, you know... What do you ask this court to do then? Well, I really, if I got a hundred percent of what I wanted, I would love a decision that says that Martinez... Oh, yes. Okay. I would love a decision that says that Martinez is confined to the 212-H context. That's the board's view of it, but I would love the court to say that. I would like for the court to say that the government doesn't have to choose between the fraud ground and the invalid documents ground. There's not a right charge that either of them or both can apply in any circumstances. Why do you say that you have the right to choose? The government has the right to choose. I mean, is there... Are you saying there's a suggestion here because A-6 exists that we might hold A-7 as unavailable? Well, I guess I'm... What do you keep... What do you want us not to say, I guess? What I don't want to happen is for the court to say, you know what, the preferable charge would have been fraud. Let's just remand for the agency to let DHS charge fraud and have this case go away. Because maybe I would have said that if Ortiz weren't out there, but we've got a circuit court saying that the government can't bring this charge, and that's troubling from the Justice Department's viewpoint. So the answer to my question is what? What do you ask this court to rule? Okay. Walk away from Martinez, or at least confine Martinez to the statute that it was and the language it was interpreting, which is not at issue here, and find that there is ambiguity when we're looking at the portability cross-referencing to the inadmissibility grounds, and the government, that is the board, is allowed to interpret that ambiguity how it wishes, and that it did so in a reasonable way here. Suppose we don't think it's ambiguous. Now what? Well, that's a problem for me. I know I have to win that argument. But it is a problem, and it's your problem. Yeah. Yes. I have to win the argument that it's ambiguous. Past that, to all these other ramifications and all the other problems, but our narrow question here, to me, is whether this statute is ambiguous, and to me, it does not appear to be that. You don't get the deference until you get there. Yeah, that's accurate. But our argument has been that 212A7 itself is of 1227A, whatever it is, if I have my numbers right, whatever, 1182 and 1227. That's just something we're gonna have to wrestle with, counsel. Does that create the ambiguity that is necessary for us to to see some opening for the BIA to run its Chevron course? So, thank you. Well, there are several published decisions, most notably the 28J letter matter of the Gouwar, that closely, very closely, resemble the analysis that the government gave here. But I think even though, even under Skidmore deference, that this board decision is completely consistent with what the board has said since the 90s, and continues to say, even with some repudiation in the 212H context from the courts. Which is an extra hurdle for you, that this similar analysis has been rejected and even abandoned by the BIA. Distinguishable, but nonetheless. All right, we'll hear the rebuttal. Thank you. Thank you. In Martinez v. McCasey, the court looked at the definition of admission. But what I think you we could draw on from that case, is that it looked at the specific context in which the term admitted was used. So here, looking at the specific context, the plain language is clear that this applies in an entry situation. But if we go broader, and we look at the 237A1H language, the entry or adjustment of status, and there's a concern of whether or not there's ambiguity there. I don't think there is. Because it's disjunctive. It's entry or whichever is applicable. And here, what was applicable was the marriage fraud charge. So I think it could be read harmoniously. What about her point that other frauds wouldn't exist and be provable employment fraud? I think there's other bases upon which . . . there's at least five that I looked into that the government could employ to combat general fraud, marriage fraud, employment fraud. And so, if we are going to allow the government to use this tool, what does that make out of the other bases? Wouldn't it render it meaningless? You're relying heavily on the reasoning of the 11th Circuit in Ortiz, yes? That's correct, Your Honor. Did you happen to read the rehearing petition there? Do you know? I haven't. I wonder if . . . The Ortiz case involved . . . I know the case, but she mentioned a panel rehearing was submitted there. I did not review that, Your Honor. So the concern here is absurdities, but as I mentioned previously, there's a lot of options that the government has to address that. And counsel mentioned a BIA decision that she recently submitted, a matter of a gore, but that case undercuts the government's position, because in that case, they had the 212A7 charge initially, but they withdrew that. And so the person was charged with the marriage fraud under 212A6C for, at the time of adjustment, the person applied and obtained a green card that the person was not entitled to. So that's a very interesting . . . there, they made the correct charge. I honestly haven't seen, again, based on my personal experience practicing immigration law, this charge. I think this is something new. But she's right. There is other case law out there that I was overlooking in my question that shows it's been around for a while. Well, I think she was referring to cases where they're defining the term lawfully admitted. I think there was that . . . I think they were defining what does lawfully admitted for permanent residence mean. And that's where you see the concept of assimilation being used. I haven't seen a case where the concept of assimilation was used in this particular context. She cited . . . may have been in the . . . I'm sure it was in the briefs, too. Stoljak? Stoljak. Do you want to mention . . . do you have any comment? I think that case involves rescission. I don't think it touches on this issue. I don't think that issue was before this court. If I remember correctly, it had something to do with refugee status and rescinding the adjustment status after the person obtained refugee status. Well, the question here is not what is the most directly applicable charge to be brought for removal. It's what is . . . is this within the range of permissible charges. And it's nothing about the immigration statutes or criminal statutes either that says you have to pick the one that factually seems to fit the request. So our question really is, is this one of the acceptable charges that can be made when this sort of event occurs? Only at the time of entry. When the person presents to take visa, obviously. I don't think that's an option for people who are applying for adjustment status. But essentially what the government is arguing that if a person's ineligible for a visa, then that person is admissible somehow. I mean, that's how it reads. And under the law, the person needs to be inadmissible under an enumerated ground of inadmissibility. And visa ineligibility is not a ground. Thank you, Your Honor. All right, counsel. Thank you both. I hope this understands this case better.